**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**WHITE FARM EQUIPMENT COMPANY, Defendant–Appellee.**

No. 92 C 7444.

United States District Court,
N.D. Illinois, E.D.

July 28, 1993.

---

## MEMORANDUM, OPINION AND ORDER

ANDERSEN, District Judge.

The sole issue on appeal is whether the United States Department of the Treasury, Internal Revenue Service ("IRS") is entitled to post-confirmation interest on its § 507(a)(7) priority claim, so that the IRS will receive the value of its claim as of the effective date of the Third Amended Plan. The bankruptcy court determined that the language of the Plan cannot be interpreted as guaranteeing payment as provided in 11 U.S.C. § 1129(a)(9)(C), and therefore, the IRS was not entitled to post-confirmation interest on its § 507(a)(7) priority claim. We affirm.

### BACKGROUND

This is an appeal from a Memorandum Decision of the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, case no. 85 B 7532. The IRS is the Appellant–Creditor. White Farm Equipment Company ("White Farm") is the Appellee–Debtor. This matter was a core proceeding before the Bankruptcy Court pursuant to 28 U.S.C. § 157(b)(2)(B). This court has jurisdiction pursuant to 28 U.S.C. § 158(a).

On May 20, 1985, an involuntary petition was filed against White Farm in the United States Bankruptcy Court for the District of Kansas. The case was transferred to the

Northern District of Illinois on June 5, 1985 and converted to a voluntary Chapter 11 case on June 14, 1985. The Official Committee of Unsecured Creditors of White Farm ("Committee") filed three separate liquidating plans of reorganization during the Chapter 11 case. The Committee's Third Amended Plan of Reorganization ("Plan of Liquidation") was confirmed by the Bankruptcy Court on November 5, 1987.

Pursuant to the Plan of Liquidation, John T. Grigsby, Jr. was appointed Designated Person of the Estate of White Farm ("Designated Person"). Grigsby has held and managed the proceeds from the liquidation of White Farm pending resolution of this dispute. On September 17, 1986, the IRS filed a claim against White Farm in the amount of $660,794.63 of which $379,106.63 represented principal indebtedness and $281,688 represented pre-petition interest. The Official Creditors' Committee disputed the IRS' contention that its claim was entitled to section 507(a)(7) priority.

On July 11, 1989, the Bankruptcy Court allowed the IRS' claim as a section 507(a)(7) priority claim. On February 20, 1989, on appeal by the Committee, the District Court reversed the Bankruptcy Court and held that the IRS' claim was a general unsecured claim. The IRS appealed the District Court's decision to the Seventh Circuit Court of Appeals which reversed the District Court and held that the IRS' claim was entitled to priority. The Committee petitioned the United States Supreme Court for a writ of certiorari. The Supreme Court denied certiorari on March 9, 1992.

The confirmed plan provided for liquidation of White Farm's assets. The IRS's claim is a Class 2 claim and according to § 4.2 of the plan:

Class 1,2,3, and 4 claims will be paid the allowed amount thereof in cash on the latter of the Effective Date or the date upon which such claims become Allowed Claims. Nothing herein shall preclude the immediate payment of any Class 1, 2, 3, and 4 claim.

The Plan defines an "Allowed Claim" as:

Any claim against the Debtor: ... a claim as to which no objection to the allowance thereof has been interposed on or before the Confirmation date (as defined herein) or such other applicable period of limitation affixed by the Bankruptcy Code, Bankruptcy Rules or the Court, or as to which any objection has been determined by a final order to the extent such objection is determined in favor of a claimant unless otherwise permitted in the Bankruptcy Code or authorized under law, or specified herein or by order of the Court, "allowed claim" shall not include interest on such claim for the period from and after the petition date (as defined herein).

After the writ of certiorari was denied, the Designated Person contacted the IRS to determine the appropriate amount of the IRS' claim. The IRS asserted that it was entitled to post-confirmation interest on its claim under § 1129(a)(9)(C) of the Bankruptcy Code from the confirmation date of the Plan to March 9, 1992 when the Supreme Court denied certiorari and the claim became an "Allowed Claim" under the applicable provisions of the Plan of Liquidation.

The Designated Person then filed a motion in the Bankruptcy Court seeking to satisfy the IRS' claim without the payment of post-confirmation interest. On October 1, 1992, Bankruptcy Court Judge John D. Schwartz entered a Memorandum Opinion and Order granting the Designated Person's motion and determined that the IRS was not entitled to post-confirmation interest. 146 B.R. 736. The IRS received a payment on account of its § 507(a)(7) priority claim on October 7, 1992. However, the payment amount covered only the portions of the allowed claim relating to tax and pre-petition interest, totalling $660,794.63. The October 7, 1992 payment was made as the result of a bankruptcy court memorandum opinion and order holding that the government was not entitled to any post-confirmation interest of its claim. The IRS now appeals that ruling.

### DISCUSSION

 In its capacity as an appellate court on bankruptcy matters, this Court

"performs an appellate rather than a fact-finding role" and must accept the bankruptcy court's findings of fact unless they are "clearly erroneous." *Matter of Evanston Motor Co., Inc.*, 735 F.2d 1029, 1031 (7th Cir.1984). The Court, however, is not so restricted in reviewing the bankruptcy court's conclusions of law, which the Court may independently examine and resolve. *Id. See also In re Dodd*, 82 B.R. 924 (N.D.Ill.1987) (bankruptcy court's conclusions of law are subject to *de novo* review). However, when a bankruptcy court interprets a confirmed plan, it interprets words on which it has already passed judgment. For these reasons, we review any of the Bankruptcy Court's interpretations of the Plan of Liquidation with full deference. *See In re Chicago Railroad Co.*, 961 F.2d 1260, 1264 (7th Cir.1992).

The IRS contends that the plain language of the plan as well as the Bankruptcy Code and relevant case law dictate that they are entitled to post-confirmation interest on their claim. The IRS relies on the Plan's definition of an "allowed claim" which provides "unless otherwise permitted in the Bankruptcy Code or authorized under law ... 'Allowed Claim' shall not include interest on such claim for the period from and after the petition date." From this language the IRS contends that the Bankruptcy Code permits the payment of post-confirmation interest on its claim.

### I. 11 U.S.C. § 1129

#### A. § 1129(a)(9)(C)

The IRS first argues that it is entitled to post-confirmation interest pursuant to § 1129(a)(9)(C) of the Bankruptcy Code. The relevant portion of § 1129(a)(9)(C) provides that:

(a) The court shall confirm a plan only if all of the following requirements are met:

(9) Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that—

(C) with respect to a claim of a kind specified in section 507(a)(7) of this title, the holder of such claim will receive on account of such claim deferred cash payments, over a period not exceeding six years after the date of assessment of such claim, of a value, as of the effective date of the plan, equal to the allowed amount of such claim.

This provision essentially gives debtors an alternative treatment for priority tax claims. A debtor may choose to defer payment of priority tax claims over a period of up to six years from the date of assessment rather than paying them in full on the effective date of the plan. In some instances, however, because of a delay in payment, interest may be required to give the creditor the full value of their claim as of the effective date of the plan. In this case, since payment was delayed as a result of litigation and appeals regarding whether the IRS claim was a § 507(a)(7) priority claim, the IRS now contends that any payment on that claim would constitute a deferred cash payment under § 1129(a)(9)(C), and thus, entitle the IRS to post-confirmation interest.

The Bankruptcy Court analyzed two § 1129(a)(9)(C) cases in its denial of post-confirmation interest. The first decision was *In re Arrow Air, Inc.*, 101 B.R. 332 (S.D.Fla.1989), in which the court confirmed a plan of reorganization which provided for payment "in full" of all allowed claims including the IRS' § 507(a)(7) claim. Payment was to be made on the effective date of the plan or as soon thereafter as practicable. *Id.* at 333. Though the plan did not provide for deferred cash payments of the IRS' § 507(a)(7) claim, the District Court held that an eleven month delay caused by the litigation of the IRS' claim warranted the award of post-confirmation interest.

The *Arrow Air* court arrived at its decision by interpreting the debtor's plan of reorganization. The issue was "whether by promising to pay the priority claim "in full" under the language of the plan, Appellee [debtor] guaranteed payment in the manner provided by Section 1129(a)(9)(C)." *Id.* at 334–35. The court determined that the "in full" language was ambiguous and

interpreted it against the debtor that drafted the plan. The court held that the language constituted a promise to pay interest on the claim for any delay in payment beyond the effective date of the plan. *Id.* at 335–36.

In this case, the Bankruptcy Court also interpreted the language of the confirmed Plan of Liquidation. Any interpretations of the Plan by the Bankruptcy Court below are entitled to full deference by this court. *See In re Chicago Railroad Co.*, 961 F.2d 1260, 1264 (7th Cir.1992). The Bankruptcy Court determined that, unlike *Arrow Air*, there is no ambiguity in White Farm's Plan. The Plan specifically provided for payment of allowed claims without any post-confirmation interest: " 'Allowed Claim' shall *not* include interest on such claims for the period from and after the Petition Date (as defined herein)." (emphasis added). In this case, there is no similar ambiguous language which could be interpreted to provide for post-confirmation interest on the IRS' claim. Therefore, the Bankruptcy Court correctly distinguished the plan in *Arrow Air* from White Farm's Plan of Liquidation.

A similar issue was addressed by the court in *In re Pharmadyne Laboratories, Inc.*, 53 B.R. 517 (Bankr.N.J.1985), in which the Bankruptcy Court for the District of New Jersey denied post-confirmation interest to the IRS. *Pharmadyne* involved a liquidating plan in which the IRS was to be paid its priority claims to the extent funds were available after higher priority claims were paid. The IRS sought post-confirmation interest pursuant to § 1129(a)(9)(C) but the court denied the request on two grounds: first, § 1129(a)(9)(C) governs the confirmation of a plan, not its administration; and second even if § 1129(a)(9)(C) is applicable, any delay in payment where the plan provided that the IRS was to be paid to the extent funds were available does not constitute a deferred payment, and thus, the IRS is not entitled to interest.

The court in *Pharmadyne* denied the IRS interest first because § 1129(a)(9)(C) does not bear upon how a plan is administered, but rather on how a plan must be drawn in order to be eligible for confirmation. *Id.* at 522. In this case, the IRS is also questioning whether the plan is being administered properly where no post-confirmation interest is paid, not whether the plan was properly drafted and confirmed. White Farm's plan has already been confirmed by the Bankruptcy Court below precisely because it did conform to the requirements of § 1129 of the Code.

In this case, the Bankruptcy Court noted a distinction between the plans in *Arrow Air* and *Pharmadyne*. In *Arrow Air*, the court interpreted a plan of reorganization as opposed to *Pharmadyne* which concerned a plan of liquidation. The Plan in this case is one of liquidation like that in *Pharmadyne*. It is not disputed that the IRS' claim in this case was neither an allowed claim nor payable until March 9, 1992 when the Supreme Court denied the Official Creditor's Committee's petition for a writ of certiorari. However, the Plan did not provide for deferred cash payments for the IRS. Instead, it provided for payment as soon as the IRS' claim became an allowed claim. In this matter we defer to the sound logic of the Bankruptcy Court which stated that the purpose of making deferred payments on a priority claim is to increase cash flow and thus increase the prospect of a successful reorganization. Here, no such purpose exists. White Farm's plan is a Plan of Liquidation that did not provide for payments over time to facilitate reorganization. The Plan simply provides for payment of allowed claims at the time they became allowed. Any payments made by White Farm to the IRS are not deferred cash payments, and therefore, § 1129(a)(9)(C) is not applicable to this case.

The IRS has further asked this court to review the cases of *In re Terex Corp.*, 984 F.2d 170 (6th Cir.1993) and *In re Mansfield Tire & Rubber Co.*, 152 B.R. 477 (Bankr. N.D.Ohio 1993). In *Terex* the Sixth Circuit Court of Appeals affirmed the ruling of the Bankruptcy Court that a priority creditor who was to be paid the allowed amount of its claim on the distribution date of the plan was entitled to interest on its claim from the effective date of the plan to the

date of payment thereon. In awarding interest, the Bankruptcy Court looked to the language of the plan first and determined that there was nothing within the plan which precluded the payment of interest on the priority claim. The court then held that it would be inequitable to allow debtors initially to contest claims thereby preventing the claims from being deemed allowed at the time of distribution and then abandon their arguments. Based on this equitable consideration, the Bankruptcy Court awarded interest from the effective date of the plan to the date of payment to give the creditor the value of its claim on confirmation.

The Court of Appeals later affirmed the decision of the Bankruptcy Court holding that the language of the plan was the foremost issue, and it did not preclude the payment of interest. Consequently, the Appellate Court also determined that the Bankruptcy Court's interpretation of the plan was entitled to full deference and the exercise of the court's equitable powers should be reviewed under an abuse of discretion standard. *Terex*, at 172, *citing In re Chicago Railroad Co.*, 961 F.2d 1260, 1264 (7th Cir.1992); *Bank of Honolulu v. Anderson (In re Anderson)*, 833 F.2d 834, 836 (9th Cir.1987) (as a matter of equity, awards and denials of post-petition interest are reviewed for abuse of discretion).

In this case, the Plan of Liquidation is clear regarding when disputed claims would be paid and whether these claims, when allowed, would include interest. Section 1.7 of the Plan explicitly defines an "allowed claim" as not including any interest. The Bankruptcy Court found no ambiguity in the Plan of Liquidation which it had confirmed in 1987. Thus, *Terex* has no further relevance to this case other than the previously established point that the bankruptcy court's interpretation of a plan, which it has earlier confirmed, is entitled to full deference by any reviewing courts.

The IRS also asks this court to review the decision of *In re Mansfield Tire & Rubber Co.*, 152 B.R. 477 (Bankr.N.D. 1193). In *Mansfield* the Bankruptcy Court determined that the IRS was entitled to post-confirmation interest on its claim. The plan provided that claims which were disputed at confirmation would be paid when they became allowed claims, without interest. The plan further stated, similar to White Farm's Plan of Liquidation, that claims which were allowed claims at the time of confirmation would be paid in full without interest at the consummation date. The debtor, however, filed its objection to the IRS' claim after confirmation, but prior to the consummation date. The dispute rested on whether the IRS held an allowed claim on the date of confirmation. The Bankruptcy Court held that it did. Once the court found that the IRS had an allowed claim at confirmation, it determined that the IRS was entitled to the treatment mandated by § 1129(a)(9)(C) of the code.

In this case, there is no dispute that the IRS did *not* hold an allowed claim at the time of confirmation of the Plan of Liquidation unlike *Mansfield* where the IRS held an allowed claim on the date of confirmation. The Bankruptcy Court's decision in this case was not persuasive in the *Mansfield* proceedings because the IRS' claim in this case (*White Farm*) was in dispute at confirmation. In *Mansfield* the claim was not in dispute until after confirmation. Furthermore, the *Mansfield* court ultimately determined that the IRS had an allowed claim at confirmation as opposed to *White Farm* where the IRS never disputed that the claim was not allowed or payable until the Supreme Court denied certiorari. Since the status of the disputed claims in *Mansfield* and *White Farm* is distinguishable, the *Mansfield* decision is not applicable to this case.

### B. 11 U.S.C. § 1129(a)(9)(A) and (B)

The IRS next argues that since § 1129(a)(9)(A) and (B) permit interest to be paid on allowed claims, it should receive interest on its claim under Section 1.7 of the Plan of Liquidation. The relevant portions of § 1129(a)(9)(A) and (B) provide:

(a) The court shall confirm a plan only if all of the following requirements are met:

(9) Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that—

(A) with respect to a claim of a kind specified in section 507(a)(7)(A)(2) of this title, on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim;

(B) with respect to a class of claims of a kind specified in section 507(a)(3), 507(a)(4), 507(a)(5) or 507(a)(6) of this title, each holder of a claim of such class will receive—

(i) if such class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

(ii) if such class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of such claim;

■ These sections of the code concern the alternative treatments for the payment of different priority tax claims depending upon whether the class of claims has accepted the plan. Tax claims may be deferred, but the debtor must then pay postconfirmation interest to give the creditor a total claim after the deferred payments which is equal to the value of the claim as of the effective date. In this case, the Bankruptcy Court has already determined that White Farm's Plan of Liquidation did not provide for the deferment of tax claims. Rather, the Plan provided that allowed tax claims, as all other allowed priority claims, would be paid in full on its effective date without interest.

■ Appellants have consistently mistaken the purpose of § 1129 of the Bankruptcy Code which is to lay out what is necessary for a plan to be confirmed and the options for payment of allowed claims. In this case, the Bankruptcy Court has already confirmed the Plan because it complied with § 1129 of the code. As confirmed, the Plan does not choose to defer

payments which would be necessary for § 1129(a)(9)(A) and (B) to be applicable to this case. Appellants argue that the IRS is entitled to interest because § 1129 allows interest in some cases and the Plan at issue allows interest where permitted by law. This logic is flawed because § 1129(a)(9)(A) and (B) allow for interest only where payments have been deferred. That is not the case in White Farm's Plan. Since the Plan of Liquidation does not provide for the deferral of payments, as interpreted by the Bankruptcy Court, these sections are not applicable in this case, and therefore, they do not entitle the IRS to post-confirmation interest on their claim.

### C. 42 U.S.C. § 1129(b)

■ The IRS also contends that under § 1129(b)(1) of the Code, interest from the effective date of the plan is required for a plan to be deemed fair and equitable with respect to impaired claims. The relevant portions of § 1129(b)(2)(B)(i) provide:

(b)(1) Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

(2) For the purposes of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:

(B) With respect to a class of unsecured claims—

(i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim;

This subsection of the code contains the so-called "cramdown" provision which allows for the confirmation of a plan over the objections of a class of claimants. It re-

**124**

quires simply that the plan meet certain standards of fairness to dissenting creditors or equity security holders. In order for a plan to be confirmed over a class objection, the plan must provide that creditors will receive property of value, as of the effective date of the plan, equal to the allowed amount of their claims. *See* 11 U.S.C. § 1129(b); *See also* Notes of Committee on the Judiciary, S.Rep. No. 95–989, 1978 U.S.Code Cong. & Admin.News p. 5787. Thus, it is necessary in some cases, in order to ensure the return of this value to an objecting class, to pay interest to those claimants.

■ This provision cannot be applied to White Farm's Plan of Liquidation. The Committee was not required to "cramdown" the Plan of Liquidation over the objection of any creditors. The only objection pending at the time of confirmation was filed by the IRS. The IRS did not pursue this objection at the confirmation hearing, and therefore, the IRS is not an objecting creditor entitled to interest under this provision. Furthermore, § 1129(b) concerns the requirements a plan must meet in order to be confirmed and not whether an allowed claim may include post-confirmation interest. Thus, § 1129(b) of the bankruptcy code does not entitle the IRS to post-confirmation on its priority claim.

## II. Unimpaired Claim

■ The IRS next argues that because the Plan of Liquidation stated that allowed § 507(a)(7) claims were unimpaired, that it is entitled to receive interest on its claim. Because this issue was not raised in the Bankruptcy Court below, it cannot be raised before this court, and therefore, it will not be considered. *See Matter of Bear*, 789 F.2d 577, 579 (7th Cir.1986) (party may not raise new issues on appeal); *In re Ratner*, 132 B.R., 728, 733 (N.D.Ill.1991) (failure to present argument in Bankruptcy Court amounts to waiver); *In re Facility Systems, Inc.*, 101 B.R. 519, 522 (N.D.Ill. 1989).

## III. Similar Treatment For Similar Claims

■ The IRS also contends that the failure to pay interest on its claim would place the IRS in a worse position than other creditors of the estate. Therefore, to ensure equitable treatment among creditors, interest must be paid on claims where payment is delayed because of litigation. This claim was also not raised in the Bankruptcy Court, and therefore, it cannot be considered by this court on appeal. *See Matter of Bear*, 789 F.2d 577, 579 (7th Cir.1986); *In re Ratner*, 132 B.R. 728, 733 (N.D.Ill.1991); *In re Facility Systems, Inc.*, 101 B.R. 519, 522 (N.D.Ill.1989).

## IV. Contract Damages

■ The IRS lastly contends that since a confirmed plan is in essence a contract, it is entitled to contract damages in the form of interest as compensation for its delay in payment. This issue was not raised below in the Bankruptcy Court, and therefore, it is also waived and cannot be considered by this court. *See Matter of Bear*, 789 F.2d 577, 579 (7th Cir.1986); *In re Ratner*, 132 B.R. 728, 733 (N.D.Ill.1991); *In re Facility Systems, Inc.*, 101 B.R. 519, 522 (N.D.Ill. 1989).

## CONCLUSION

For the foregoing reasons, the order of the Bankruptcy Court denying the IRS post-confirmation interest on its § 507(a)(7) priority tax claim is affirmed.