ALARCON, Circuit Judge:
 

 Steve Myrvang and Joanne Myrvang (collectively “the Myrvangs”) appeal from the district court’s order affirming the bankruptcy court’s ruling that Mr. Myr-vang’s debt to his former spouse June Cotner Graves is nondisehargeable. The Myrvangs contend that the bankruptcy court’s determination of nondischargeability was erroneous as a matter of law. They further maintain that the district court erred in affirming the bankruptcy court’s imposition of a five-year debt repayment plan and in granting a partial discharge of Mr. Myrvang’s debt. The Myrvangs also object to the bankruptcy court’s mandatory penalty for late payment. We conclude that the bankruptcy court properly interpreted 11 U.S.C. § 523(a)(15). We also conclude that the bankruptcy court acted within its equitable powers in ordering a five-year repayment plan and the partial discharge of Mr. Myrvang’s debt to Ms. Graves. We reverse the imposition of the penalty provision for late payment because it exceeded the bankruptcy court’s equitable powers.
 

 I
 

 Mr. Myrvang and Ms. Graves divorced in 1994. Under the terms of their divorce decree, Mr. Myrvang received, inter alia, his architectural practice and the couple’s marital residence subject to two mortgages, the first to Bank of America (in the amount of approximately $350,000) and the second to Seafirst Bank (in the amount of approximately $70,000). Ms. Graves received a second home subject to a mort
 
 *1119
 
 gage, a judgment in the amount of $174,-188, and spousal maintenance to run for five years. The future royalties from two books written by Mr. Myrvang and Ms. Graves during their marriage were divided. The state court ordered that Ms. Graves receive 57% and Mr. Myrvang 43% of the royalties.
 

 Mr. Myrvang subsequently married Joanne L. Jurgich (“Ms.Myrvang”) in 1995. On December 30, 1996, the Myr-vangs filed for bankruptcy under Chapter 13. Five months later they converted their case to a Chapter 7 petition. On the date the petition was filed, Mr. Myrvang had not paid approximately $120,000, including interest, of the amount he was ordered to pay Ms. Graves under the terms of the divorce decree. Ms. Graves filed an adversary complaint in the bankruptcy court against the Myrvangs for a determination that the debts set forth in the divorce decree were nondischargeable pursuant to 11 U.S.C. § 523(a).
 

 Before trial on Ms. Graves’s adversary complaint, the trustee of Mr. Myrvang’s estate sold his home and used the proceeds to pay off the mortgage owed by Mr. Myrvang to Bank of America. Mr. Myrvang’s second mortgage to Seafirst Bank, however, remained outstanding.
 
 [1]
 

 Following trial, the bankruptcy court reached several conclusions. First, Mr. Myrvang was obliged to pay the sums listed in the divorce decree. Second, the Myrvangs had failed to satisfy their burden of proof as to the two affirmative defenses of inability to pay and “greater benefit” under § 523(a)(15).
 
 [2]
 
 Mr. Myrvang had the ability to pay his obligations based upon the disposable income test normally utilized in Chapter 13 proceedings, and the benefit to the Myrvangs of dis
 
 *1120
 
 charging these obligations would not outweigh the detrimental impact that discharge would have on Ms. Graves.
 

 The bankruptcy court ordered that the Myrvangs pay the sum of $102,000 to Ms. Graves over a five year period. The court ordered that the remainder of Mr. Myr-vang’s debt to Ms. Graves be discharged. The bankruptcy court’s judgment also provided that if the Myrvangs failed to make the payments as provided in its order, judgment would be entered against them in the full amount of Mr. Myrvang’s indebtedness to Ms. Graves and a penalty of $73,000 would be assessed against them. The district court affirmed that portion of the bankruptcy court’s order holding that Mr. Myrvang’s debt to Ms. Graves was nondischargeable under § 523(a)(15). Upon the stipulation of the parties, however, the district court reversed that portion of the bankruptcy court’s judgment imposing individual liability against Ms. Myr-vang in her separate capacity. The Myr-vangs timely filed this appeal. We have jurisdiction pursuant to 28 U.S.C. § 158(d). The Myrvangs seek reversal of that portion of the district court’s order affirming the bankruptcy court’s judgment that Mr. Myrvang is individually hable for the unpaid balance of the debt owed to Ms. Graves pursuant to the divorce decree.
 

 II
 

 A.
 

 The Myrvangs attack the bankruptcy court’s decision on the grounds that it determined Mr. Myrvang’s present ability to pay under § 523(a)(15)(A) by improperly considering his past financial condition. The Myrvangs base their argument on the bankruptcy court’s finding that the “[d]e-fendants have consistently made maintenance payments to [pjlaintiff as called for under the decree.” They contend that the court should have made an estimate of Mr. Myrvang’s prospective future income in considering whether he would be able to pay his debt.
 

 In reviewing a bankruptcy court’s judgment we conduct “de novo review of legal conclusions and clear error review of factual findings” while “[m]ixed questions [of law and fact] presumptively are reviewed ... de novo because they require consideration of legal concepts and the exercise of judgment about the values that animate legal principles.”
 
 Murray v. Bammer (In re Bammer),
 
 131 F.3d 788, 792 (9th Cir.1997) (en banc). We give no deference to the decision of the district court.
 
 See Wolkowitz v. American Research Corp. (In re DAK Indus., Inc.),
 
 170 F.3d 1197, 1199 (9th Cir.1999). Because the question whether § 523(a)(15)(A) requires a forward or backward calculation of income is a legal one, we review the bankruptcy court’s analysis de novo.
 

 Contrary to the Myrvangs’s contention, the bankruptcy court made clear that it was taking into account both Mr. Myrvang’s past payment history and future income stream. The court found that Mr. Myrvang had the ability to pay because his maintenance payments to Ms. Graves would be reduced and then ended altogether in the near future, leaving him more disposable income. Similarly, the court determined that Mr. Myrvang’s educational expenses would be reduced within two years when his son graduated from college, again increasing his future disposable income. We reject as baseless the Myrvangs’s claim that there “was simply no effort undertaken [by the bankruptcy court] ... to reach a conclusion as to [how much money] was available going forward.”
 
 [3]
 

 
 *1121
 
 B.
 

 The Myrvangs contend that, even if the bankruptcy court correctly determined that Mr. Myrvang was able to pay the amount awarded in the divorce decree, it erred in concluding that the balance of the equities under § 523(a)(15)(B) favors Ms. Graves. Because the “balance of the equities” test required the bankruptcy court to reach an equitable conclusion rather than a factual or legal one, we review the decision for an abuse of discretion.
 
 See Bank of Honolulu v. Anderson (In re Anderson),
 
 833 F.2d 834, 836 (9th Cir.1987) (per curiam) (appellate courts use the abuse of discretion standard to review bankruptcy court’s equitable actions);
 
 Terex Corp. v. Metropolitan Life Ins. Co. (In re Terex Corp.),
 
 984 F.2d 170, 172 (6th Cir.1993) (bankruptcy court’s exercise of its equitable powers reviewed for abuse of discretion).
 

 The Myrvangs maintain that “it was not by any means obvious from the evidence at trial that one party or the other had the weight of equity, let alone that the detriment to ... [Ms.] Graves substantially outweighed the Myrvangs’[s] fresh start.” This argument misapprehends the proper test for determining dischargeability under § 523(a)(15)(B). It is the debtor and not the creditor who has the burden of persuading the bankruptcy court that a nondisehargeable debt under § 523(a)(15) nonetheless qualifies for discharge.
 
 See In re Jodoin,
 
 209 B.R. 132, 141 (9th Cir. BAP 1997);
 
 cf. Hill v. Smith,
 
 260 U.S. 592, 595, 43 S.Ct. 219, 67 L.Ed. 419 (1923) (holding that the party claiming the exception to a statutory provision is required to prove the exception). The bankruptcy court determined that Mr. Myrvang failed to satisfy his burden of persuasion. It did not abuse its discretion in weighing the equities.
 

 C.
 

 The Myrvangs assert that the bankruptcy court erred in compelling Mr. Myrvang to repay his debt over a five year period. While conceding that § 523(a)(15)(A) does not specify the period of time over which payments should be made, the Myrvangs contend that the bankruptcy court should have adopted the three-year limitation on payment set forth in Chapter 13. They maintain that a five-year payment period is unreasonable as a matter of law. They point out that, had they not converted their Chapter 13 petition into a Chapter 7 petition, Mr. Myrvang’s payment plan would have been limited to three years. The Myrvangs further assert that because the disposable income test used by the bankruptcy court in determining Mr. Myrvang’s ability to pay is derived from Chapter 13, the bankruptcy court should have, for the sake of doctrinal consistency, also applied the preference of Chapter 13 for three-year repayment plans as codified in 11 U.S.C. § 1322(d).
 
 [4]
 
 Because the question of
 
 *1122
 
 whether § 528(a)(15) permits the imposition of five-year repayment plans is a legal one, we review the bankruptcy court’s decision de novo.
 

 Whether five-year repayment plans are acceptable in the context of Chapter 7 proceedings appears to be a novel question. The parties do not cite a controlling case, and our research has revealed none. The bankruptcy court’s employment of a five-year repayment plan would be impermissible under Chapter 13. For this reason, at least one court has implicitly held that repayment plans under 11 U.S.C. § 523(a)(15) should be limited to three years.
 
 See Greenwalt v. Greenwalt (In re Greenwalt),
 
 200 B.R. 909, 913 (Bankr.W.D.Wash.1996) (adopting the Chapter 13 test for determining ability to pay under § 523(a)(15)(A) and stating that “[u]nder this standard, the court must critically assess the debtor’s budgeted expenses to determine the minimum the debtor could afford to pay over a three-year period”).
 

 Inconsistencies between Chapters 7 and 13, however, are relatively common. Debts arising from fraud, fiduciary fraud, willful and malicious injury, and matrimonial obligations can be determined to be nondischargeable in Chapter 7 but are fully dischargeable in Chapter 13. Unlike the three-year limitation set forth in Chapter 13, Chapter 7 does not expressly prohibit a bankruptcy court from ordering a debtor to pay the debt in five years.
 

 We are aided in our analysis by the Supreme Court’s interpretation of § 523(a) and its exceptions. In
 
 Cohen v. de la Cruz,
 
 523 U.S. 213, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998), the Court considered an appeal from a bankruptcy court’s decision that an award of treble damages against a landlord-debtor for fraud was nondischargeable under § 523(a)(2)(A).
 
 Id.
 
 at 215-17, 118 S.Ct. 1212. In affirming, the Court explained that “[t]he various exceptions to discharge in § 523(a) reflect a conclusion on the part of Congress ‘that the creditors’ interest in recovering full payment of debts in these categories outweigh[s] the debtors’ interest in a complete fresh start.’ ”
 
 Id.
 
 at 222, 118 S.Ct. 1212 (alteration in original) (quoting
 
 Grogan v. Garner,
 
 498 U.S. 279, 287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991));
 
 see also In re Bammer,
 
 131 F.3d 788, 793 (9th Cir.1997) (discussing
 
 Grogan
 
 and concluding that § 523(a) acts as a limitation on the traditional goal of the Bankruptcy Act to provide debtors a fresh start). In light of the Supreme Court’s view of the Congressional intent underlying § 523(a), it becomes less incongruous for a court to employ the Chapter 13 disposable income test, while at the same time foregoing the three-year plan requirement.
 
 Cohen
 
 makes clear that the § 523(a) exceptions to discharge under Chapter 7 are special and need not conform precisely to the “fresh start” philosophy of the Bankruptcy Code. The bankruptcy court did not err in ordering repayment over five years.
 

 D.
 

 The Myrvangs next contend that the bankruptcy court erred in ordering a partial discharge of the debt. They maintain that nothing in the language of § 523(a)(15) authorizes a bankruptcy court to issue an order of partial discharge. Instead, they assert, a bankruptcy court is compelled to make an all-or-nothing choice. Whether partial discharge is permissible under § 523(a)(15) is a legal question that we review de novo.
 

 The Myrvangs’s position admittedly has some support in case law. In
 
 United Student Aid Funds, Inc. v. Taylor (In re Taylor),
 
 223 B.R. 747 (9th Cir. BAP 1998), the debtor petitioned the bankruptcy court to discharge his student loan debts under § 523(a)(8) on the grounds of undue hardship. The bankruptcy court granted the
 
 *1123
 
 debtor a partial discharge of his debt. His creditor appealed.
 
 See id.
 
 at 749. The Bankruptcy Appellate Panel for the Ninth Circuit (“BAP”) reversed.
 
 See id.
 
 at 752.
 

 The BAP reasoned that the plain language of § 523(a)(8), which provided for the nondischargeability of student loans unless exempting “such debt” from discharge would cause undue hardship, prohibited partial discharge.
 
 See id.
 
 at 752-53. Because Congress had failed to include the qualifier “ ‘to the extent’ that such debt will cause undue hardship,” the BAP presumed that Congress intended that a bankruptcy court should apply an all-or-nothing approach in considering the discharge of a student loan.
 
 See id.
 
 at 753.
 

 The BAP’s recent decision in
 
 In re Taylor,
 
 however, has already elicited criticism. The district court in
 
 Great Lakes Higher Education Corp. v. Brown (In re Brown),
 
 239 B.R. 204 (S.D.Cal.1999), rejected the BAP’s view that the phrase “such debts” could be interpreted to require an all-or-nothing approach.
 
 See id.
 
 at 210-11. The court reasoned that “us[ing] an all-or-nothing approach has the effect of rendering large debt more likely of discharge, and reward[s] irresponsible borrowing.”
 
 Id.
 
 at 211. The district court concluded that it should not be presumed that Congress intended such a narrowing restriction on a bankruptcy court’s equitable powers.
 
 See id.
 

 In
 
 In re Greenwalt,
 
 200 B.R. 909 (Bankr.W.D.Wash.1996), a case decided prior to the BAP’s decision in
 
 In re Taylor,
 
 the bankruptcy court rejected the all- or-nothing approach applied by some courts in construing § 523(a)(8) and concluded that “a partial discharge is justified by § 523(a)(15).”
 
 Id.
 
 at 914. It concluded that the “such debt” language of § 523(a)(15) meant that “the court may review each liability separately.”
 
 Id.
 
 As we read
 
 In re Greenwalt,
 
 it requires a bankruptcy court to divide a debtor’s liability to his or her former spouse into its separate, constituent obligations. The court may then discharge in total each separate obligation, resulting in a partial discharge of the total debt, but may not partially discharge a separate obligation.
 
 See id.
 
 This approach might yield inequitable results, as when one party’s total debt to his or her former spouse is composed of a very large obligation plus a much smaller one. In that case, if the debtor requested discharge and had an ability to pay an amount that was slightly less than the large obligation but much more than the small obligation, under
 
 In re Greenwalt
 
 the bankruptcy court would have to discharge the large obligation in its entirety. The debtor would then be required to pay only the smaller obligation, despite his or her ability to pay much more.
 

 In
 
 Tennessee Student Assistance Corp. v. Hornsby (In re Hornsby),
 
 144 F.3d 433 (6th Cir.1998), the Sixth Circuit rejected the notion that a bankruptcy court lacks the power to order a partial discharge of a separate liability. The court reasoned that 11 U.S.C. § 105(a) permits a bankruptcy court to order a partial discharge.
 
 See id.
 
 Section 105(a) reads:
 

 The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.
 

 Addressing the context of student loan discharges under § 523(a)(8), the court reasoned that “where undue hardship does not exist, but where facts and circumstances require intervention in the financial burden on the debtor, an all-or-nothing treatment thwarts the purpose of the Bankruptcy Act.”
 
 In re Hornsby,
 
 144 F.3d at 439.
 

 We agree with the Sixth Circuit’s reasoning in
 
 In re Hornsby.
 
 Its analysis applies with equal force to dis-
 
 *1124
 
 chargeability proceedings under § 523(a)(15).
 
 Cf. SEC v. United States Realty & Improvement Co.,
 
 310 U.S. 434, 455, 60 S.Ct. 1044, 84 L.Ed. 1293 (1940) (“A bankruptcy court is a court of equity and is guided by equitable doctrines and principles except in so far as they are inconsistent with the Act.” (citations omitted)),
 
 cited in In re Hornsby,
 
 144 F.3d at 439. Moreover, as the Supreme Court has said in the context of interpreting the Bankruptcy Code, “[t]he plain meaning of legislation should be conclusive, except in the ‘rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.’ ”
 
 United States v. Ron Pair Enters., Inc.,
 
 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (quoting
 
 Griffin v. Oceanic Contractors, Inc.,
 
 458 U.S. 564, 571, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982)). We believe that construing the words “such debt” to preclude a partial discharge would run counter to the bankruptcy courts’s equitable powers under 11 U.S.C. § 105(a). Therefore, we hold that a bankruptcy court has the discretion to order a partial discharge of a separate debt arising out of the terms of a divorce decree. Thus, the bankruptcy court did not err as a matter of law in concluding that it had the discretion to order a partial discharge.
 

 Bankruptcy Rule 7052, however, requires “the bankruptcy court to make findings of fact and conclusions of law in all actions tried upon facts without a jury.”
 
 Jess v. Carey (In re Jess),
 
 169 F.3d 1204, 1208 (9th Cir.1999). The bankruptcy court did not make express findings to support its conclusion that Mr. Myrvang was entitled to only a partial discharge of his debts to Ms. Graves. Thus, we cannot tell from the present record how the court determined that some but not all of the amount owed to Ms. Graves was dischargeable. Therefore, we must vacate the district court’s judgment affirming the bankruptcy court’s order granting Mr. Myrvang a partial discharge and remand to the bankruptcy court for further proceedings with directions that it make express findings to support its conclusion that a part of the debt owing to Ms. Graves is dischargeable.
 
 See Swanson v. Levy,
 
 509 F.2d 859, 861 (9th Cir.1975) (“When there is a failure to make ... necessary findings this court will not dismiss [an] appeal, but ordinarily vacates the judgment and remands the case to the district court.”).
 

 Ill
 

 The Myrvangs assert that the bankruptcy court incorrectly applied the law by providing for a $73,000 penalty in the event that Mr. Myrvang failed to make a payment to Ms. Graves. The scope of a bankruptcy court’s power under § 105(a) is a legal question that we review de novo.
 

 There is general support for the position that bankruptcy courts lack authority to provide a penalty provision. In
 
 Guerin v. Weil, Gotshal & Manges,
 
 205 F.2d 302 (2d Cir.1953), a decision authored by Judge Augustus Hand, the court reversed a bankruptcy court’s order requiring a debt- or to pay accountants’s and appraisers’s fees.
 
 See id.
 
 at 305. Judge Hand stated:
 

 ‘It is well settled that the bankruptcy court lacks power to grant, and the policy of the Act is against, compensation not expressly provided by the Act.’ Although it has been broadly stated that a bankruptcy court is a court of equity, the exercise of its equitable powers must be strictly confined within the prescribed limits of the Bankruptcy Act.
 

 Id.
 
 at 304 (quoting
 
 Lane v. Haytian Corp. of America,
 
 117 F.2d 216, 219 (2d Cir.1941)) (citations omitted). The Supreme Court held in
 
 Norwest Bank Worthington v. Ahlers,
 
 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988), that “whatever equitable powers remain in bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code.”
 
 Id.
 
 at 206, 108 S.Ct. 963.
 

 More recent opinions at the circuit level are equally insistent that a bankruptcy court’s application of § 105(a) is limited to those situations where it is “a means to
 
 *1125
 
 fulfill some specific Code provision.”
 
 In re Fesco Plastics Corp.,
 
 996 F.2d 152, 154 (7th Cir.1993);
 
 see IRS v. Kaplan (In re Kaplan),
 
 104 F.3d 589, 597-98 (3d Cir.1997) (“ ‘[T]he fact that a [bankruptcy] proceeding is equitable does not give the judge a free-floating discretion to redistribute rights in accordance with his [or her] personal views of justice and fairness, however enlightened those views may be.’ ” (alterations in original) (quoting
 
 In re Chicago, Milwaukee, St. Paul and Pac. R.R.,
 
 791 F.2d 524, 528 (7th Cir.1986)));
 
 Noonan v. Secretary of Health and Human Servs. (In re Ludlow Hosp. Soc’y, Inc.),
 
 124 F.3d 22, 27 (1st Cir.1997) (“[T]he equitable discretion conferred upon the bankruptcy court ... ‘cannot be used in a manner inconsistent with the commands of the Bankruptcy Code.’ ” (quoting
 
 In re Plaza de Diego Shopping Ctr., Inc.,
 
 911 F.2d 820, 824 (1st Cir.1990))).
 

 Exercise of § 105 powers must be linked to another specific Bankruptcy Code provision.
 
 See, e.g., Norwest Bank Worthington v. Ahlers,
 
 485 U.S. at 206, 108 S.Ct. 963. In the case of the bankruptcy court’s imposition of a five-year repayment plan, the linked provision is § 523(a), and the reasoning tying the two Bankruptcy Code provisions together is the Supreme Court’s declaration that “[t]he various exceptions to discharge in § 523(a) reflect a conclusion on the part of Congress ‘that the creditors’ interest in recovering full payment of debts in these categories outweigh[s] the debtors’ interest in a complete fresh start.’ ”
 
 Cohen v. de la Cruz,
 
 523 U.S. 213, 222, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998) (alteration in original) (quoting
 
 Grogan v. Garner,
 
 498 U.S. 279, 287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)).
 

 The bankruptcy court’s imposition of a $73,000 penalty as an incentive to induce Mr. Myrvang to make timely payments on his debt to Ms. Graves, however, is a different matter. The imposition of a penalty is not finked to any provision of the Bankruptcy Code. Section 523(a) contemplates nondisehargeabifity as a method of making whole the special creditors it protects, not providing them with a windfall. We have not discovered any case where a bankruptcy court has included a penalty provision as a way of encouraging the payment of nondischargeable debts. The penalty provision conflicts with the bankruptcy court’s own finding that Mr. Myrvang was unable to pay the entirety of the debt owed Ms. Graves and its decision to grant a partial discharge. Plainly, if the bankruptcy court agrees that requiring Mr. Myrvang to pay the entirety of his obligation to Ms. Graves would leave him in a state of penury, it makes little sense to order Mr. Myr-vang to pay a penalty provision if he fails to make a payment that nearly equals the sum of his indebtedness.
 

 In brief, while reliance on the bankruptcy court’s equity powers in § 105(a) is justifiable in requiring Mr. Myrvang to pay his debt in five years, § 105(a) does not authorize the imposition of a penalty provision for late payment.
 

 CONCLUSION
 

 The bankruptcy court employed the proper test in determining that Mr. Myr-vang failed to carry his burden of demonstrating that he lacked the ability to pay the debt owing to Ms. Graves. The bankruptcy court did not abuse its discretion in finding that Mr. Myrvang failed to show that the balance of the equities favored discharge of his debt. The imposition of a five-year payment plan, and the partial discharge of Mr. Myrvang’s debt, was within the scope of the bankruptcy court’s equitable powers under 11 U.S.C. § 105(a). The bankruptcy court exceeded its equitable powers, however, in providing that Mr. Myrvang must pay a penalty of $73,000 if he fails to make a payment. We must reverse the portion of the district court’s judgment affirming the bankruptcy court’s imposition of the $73,000 penalty. The bankruptcy court failed to make specific findings that would allow us to review its grant of a partial discharge of Mr. Myr-vang’s debt to Ms. Graves. We vacate
 
 *1126
 
 that portion of the district court’s judgment affirming the bankruptcy court’s order granting a partial discharge and remand to the bankruptcy court for further proceedings with directions that the bankruptcy court make express findings to support its conclusion that a part of the debt owing to Ms. Graves is dischargeable.
 

 Each party shall bear its own cost.
 

 AFFIRMED in part, VACATED and REMANDED in part.
 

 [1]
 

 . After completion of the proceedings to determine the dischargeability of the debt owed to Ms. Graves, the trustee made a payment to Seafirst of $15,123.93, so that approximately $60,000 remained on that debt. Ms. Graves contends that the bankruptcy trustee’s payment on the Seafirst mortgage should not be considered by this court because it was not a part of the record before the bankruptcy judge. She has filed a motion to strike any references to the payment in the Myrvangs’s brief. The Myrvangs counter that the disbursement of proceeds from the sale of Mr. Myrvang’s home was not completed until after trial, that the sale generated more money than originally anticipated, and that Mr. Myr-vang was able to apply that money towards paying off his second mortgage to Seafirst. The Myrvangs contend that this makes a collection action by Seafirst against Ms. Graves less likely and that the balance of the equities therefore favors Mr. Myrvang. Absent that rare case where "the interests of justice demand it,"
 
 Dakota Indus., Inc. v. Dakota Sportswear, Inc.,
 
 988 F.2d 61, 63 (8th Cir.1993), an appellate court will not consider evidence not presented to the trial court,
 
 see Kirshner v. Uniden Corp. of Am.,
 
 842 F.2d 1074, 1077 (9th Cir.1988). Since a reading of the record reveals no sign of clear error in the bankruptcy court’s interpretation of the facts, and since the Myrvangs's addition could not have significantly changed the judge’s calculus of nondischargeability, Ms. Graves’s motion to strike is granted.
 

 [2]
 

 . Under § 523(a)(15), debts incurred in the course of a divorce proceeding are not dis-chargeable unless the debtor can establish that (1) the debtor does not have the ability to pay, or (2) the benefit of discharge to the debtor outweighs the detriment of discharge to the former spouse.
 
 See Jodoin v. Samayoa (In re Jodoin),
 
 209 B.R. 132, 141 (9th Cir. BAP 1997). Section 523(a)(15) states:
 

 (a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt—
 

 (15) not of the kind described in paragraph (5) [for alimony, maintenance, or support] that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—
 

 (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or
 

 (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor[.]
 

 [3]
 

 . The parties have not briefed, and we do not decide, whether the disposable income test of 11 U.S.C. § 1325(b)(2) is the exclusive method that a bankruptcy court must employ in determining ability to pay under § 523(a)(15)(A). We note, however, that courts have employed a variety of approaches in determining a debtor's ability to pay a divorce-related debt.
 
 See In re Jodoin,
 
 209 B.R. 132, 142 (9th Cir. BAP 1997) (the disposable income test provides an "excellent reference point” for determining ability to pay);
 
 Greenwalt v. Greenwalt (In re Greenwalt),
 
 200 B.R. 909, 913 (Bankr.W.D.Wash.1996) (stating that the majority of courts adopt the dis
 
 *1121
 
 posable income test);
 
 Humiston v. Huddelston (In re Huddelston),
 
 194 B.R. 681, 688-89 (Bankr.N.D.Ga.1996) (employing a totality of the circumstances test);
 
 Comisky v. Comisky (In re Comisky),
 
 183 B.R. 883, 884 (Bankr.N.D.Cal.1995) (employing the undue hardship test from 11 U.S.C. § 523(a)(8));
 
 Florio v. Florio (In re Florio),
 
 187 B.R. 654, 657 (Bankr.W.D.Mo.1995) (test for ability to pay should be determined on a case-by-case basis).
 

 [4]
 

 . 11 U.S.C. § 1322(d) provides that "[a Chapter 13 reorganization] plan may not provide for payments over a period that is longer than three years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than five years.” Most courts have taken this to mean that, at least in the case of Chapter 13, debtors are under no obligation to propose a plan longer than three years and cannot be forced into a plan of longer duration on the insistence of a creditor.
 
 See Washington Student Loan Guar. Ass’n v. Porter (In re Porter),
 
 102 B.R. 773, 777 (9th Cir. BAP 1989) (adopting the view that debtors must voluntarily choose to extend their plan beyond three years);
 
 In re Burris, 208
 
 B.R. 171, 177-78 (Bankr.W.D.Mo.1997) (stating that Chapter 13 plans cannot be extended beyond three years at the request of a creditor);
 
 In re Coburn,
 
 175 B.R. 400, 402 (Bankr.D.Or.1994) (concluding that a creditor cannot compel a debtor to adopt a payment plan of greater than thirty-six months).
 
 But see O’Donnell v. New Hamp
 
 
 *1122
 

 shire Higher Educ. Assistance Found. (In re O’Donnell),
 
 198 B.R. 1, 4 (Bankr.D.N.H.1996) (approving a five and ten-year-student loan repayment plan under Chapter 7);
 
 In re Todd,
 
 65 B.R. 249, 252 (Bankr.N.D.Ill.1986) (holding that five-year plans are appropriate in Chapter 13 cases where "obligations are dis-chargeable under Chapter 13 yet nondis-chargeable under Chapters 7 or 11”).